IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE FOLLOWING: | Case No. 3:22-mj-52 |
|---|---|
| DIANNE@CARTERREALTY1.COM THAT IS STORED AT PREMISES CONTROLLED BY ZOHO CORPORATION. | **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brian Park, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this Affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Zoho Corporation ("Zoho"), a technology company that specializes in internet-related services and products, headquartered at 4141 Hacienda Drive, Pleasanton, CA 94588.  The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Zoho to disclose to the government records and other information (including the content of communications) in its possession pertaining to the subscriber or customer associated with the DIANNE@CARTERREALTY1.COM email address, as further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with Internal Revenue Service, Criminal Investigation Division ("IRS-CI") and have been since 2019.  As a Special Agent with IRS-CI, I am charged

1

with investigating violations of federal revenue laws and related offenses. I have received training in the investigation of financial crimes in violation of federal law. I am a graduate of the Federal Law Enforcement Training Center, administered by the U.S. Department of Homeland Security, and the National Criminal Investigator Training Academy, administered by Internal Revenue Service – Criminal Investigation. I have worked with investigators of federal, state, and local law enforcement agencies to investigate allegations of tax and non-tax violations.

3.     The facts set forth in this Affidavit are based on my personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, review of documents and records related to this investigation, communication with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. The information provided in this Affidavit is supported by my training, experience, education, and participation in this and other financial investigations. As this Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant, it does not set forth all my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of 18 U.S.C. § 401(3) (criminal contempt) and 26 U.S.C. § 7206(2) (aiding or assisting in the preparation of false returns) have been committed by DIANNE CARTER ("CARTER") doing business as CARTER SENSIBLE REALTY AND TAX SERVICE ("CSRTS"), HAYNES TAX, and/or MBC TAX, and that CARTER used the email address DIANNE@CARTERREALTY1.COM in committing those crimes. There is probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## JURISDICTION

5.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offenses being investigated." 18 U.S.C. § 2711(3)(A)(i).  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## PROBABLE CAUSE

6.    On or about October 2, 2017, this Court issued a permanent injunction against CARTER, prohibiting her and her business, CSRTS, as well as any other business she operates, from acting as a federal income tax return preparer, from preparing or filing federal tax returns on behalf of others, or advising, assisting, counseling, or instructing anyone about the preparation of a federal tax return. *United States v. Dianne Carter*, 3:16-cv-00673-FDW-DCK (Doc. No. 16) (Hon. Frank D. Whitney). CARTER represented herself in the matter.  As recited in the Order granting the permanent injunction, CARTER prepared individual income tax returns reporting fabricated income and withholdings for prison inmates and prepared five false trust returns claiming no income but large withholdings.  CARTER omitted her preparer identification number from six returns. In addition to barring CARTER from aiding or assisting in the preparation of tax returns, the Court ordered CARTER to notify all persons for whom she had prepared a tax return of the permanent injunction. The Court required CARTER to provide the United States a list of all persons for whom she prepared federal income tax returns from January 1, 2010 to the date of the injunction. Ultimately, CARTER provided a list of clients in accordance with the court's instruction to do so.

3

7.     Your Affiant submits there is probable cause that from 2018 through the present, in the Western District of North Carolina, CARTER continued to assist in the preparation of federal tax returns, even though CARTER was enjoined from preparing tax returns by this Court on or about October 2, 2017, in violation of 18 U.S.C. § 401(3), criminal contempt, and prepared fraudulent federal tax returns, in violation of 26 U.S.C. § 7206(2), aiding or assisting in the preparation of false returns.

### *Case Origin and Identifying Returns*

8.     IRS-CI agents discovered that CARTER prepared a tax return for the 2018 tax year using the firm "MBC Tax" and the name Monica Cruz as the paid preparer.  IRS-CI agents identified the Electronic Filing Identification Number ("EFIN") 699523 as registered to MBC Tax and the Preparer Tax Identification Number ("PTIN") P02139304 as registered to Monica Cruz. An EFIN is an identification number that the IRS issues to tax preparers so that they can electronically file tax returns. IRS records reflect that "Monica Cruz", doing business as MBC Tax, applied for the EFIN 699523 on February 6, 2018. The address listed on the EFIN application is an address where CARTER resides, in Matthews, North Carolina, 28105. A PTIN is an identification number issued by the IRS to individuals who prepare federal tax returns. IRS records reflect that the PTIN P02139304 was issued to Monica Cruz on January 25, 2018. The address listed in IRS records as associated with the PTIN P02139304 is the same address where CARTER resides in Matthews, North Carolina, 28105.

9.     An analysis by the IRS's Scheme Development Center ("SDC") showed that 230 federal income tax returns were filed using EFIN 699523 between March 2018 and July 2020.  All of these returns listed "MBC Tax" as the preparer firm. Many of those returns listed the paid preparer as Monica Cruz. Other returns listed "Monica," "Alexis Cruz," or "Alexis" as the paid preparer. Returns which listed "Alexis" or "Alexis Cruz" as the paid preparer were filed using the

4

PTIN P0213846. The address listed in IRS records as associated with the PTIN P0213846 is the same address where CARTER resides in Matthews, North Carolina, 28105.

10.     Monica Bentley ("Bentley") is CARTER'S daughter, who went by the name Monica Cruz until about 2009. During IRS-CI interviews with Bentley, Bentley stated that she does not know how to prepare taxes. Bentley told IRS CI-agents that she did not have any knowledge of MBC Tax and did not know why federal income tax returns using the name Monica Cruz were being filed with the IRS. Bentley told the IRS that she had not applied for a PTIN prior to October 2021.

11.     According to Alexis Cruz ("Alexis"), Alexis is CARTER's granddaughter and Bentley's daughter. The IRS identified a federal income tax return filed for tax year 2017 which lists Alexis Cruz with Haynes Tax in Hollywood, FL as the paid preparer, using EFIN 650422. Alexis was 18 years old in 2018, when the federal income tax return for the 2017 tax year would have been prepared and filed. Alexis told IRS-CI agents in 2021 that she was currently studying to become a tax preparer, and that she has never prepared federal income tax returns for other people. Alexis stated that she encountered issues applying for and receiving her own PTIN in November 2021 because her information had already been used without her knowledge to create a PTIN. She told IRS-CI agents she was not familiar with Haynes Tax or MBC Tax.

12.     IRS-CI agents interviewed 19 taxpayers whose names appear on the SDC list as having had federal income tax returns filed by EFIN 699523 between March 2018 and July 2020 Of those taxpayers, 16 stated that CARTER prepared and filed their tax returns. One taxpayer stated that CARTER had prepared her tax returns for a long time but did not specify whether CARTER prepared her returns from 2018 onward. One taxpayer stated that she knows CARTER

5

well and that CARTER did not work with her taxes. A third taxpayer stated he was not sure if CARTER was the person who prepared his tax returns.

13.     The IRS identified other returns filed using the EFINs 699523 and 650422 between 2018 and 2021. IRS-CI agents interviewed 3 additional taxpayers whose names did not appear on the SDC list but who stated that CARTER prepared and filed their tax returns in 2018 for the 2017 tax year.

14.     Returns filed using EFINs 699523 and 650422 were transmitted to the IRS by Drake Software ("Drake") as the tax-filing software provider. Drake records show that the EFIN 699523 is associated with an account in the name of MBC Tax, and the EFIN 650422 is associated with an account in the name of Haynes Tax. The Drake account associated with MBC Tax lists the address where CARTER resides in Matthews, North Carolina as the contact address, owner address, and EFIN owner address. This same address is listed on a State Employees Credit Union (SECU) account ending -9099 registered in CARTER's name. The EFIN owner phone number listed on the Drake account associated with MBC Tax is a phone number ending -9558, which multiple client witnesses have said is CARTER's number.  The bank account listed on the Drake account associated with MBC Tax is a SunTrust account ending -5511 in the name of the Moorish Holy Temple of Science. The SunTrust (now called Truist) account ending -5511 is registered to the Moorish Holy Temple of Science with the name Dianne Carter as the signing representative. The Drake account associated with Haynes Tax also lists as an alternate address the address where CARTER resides in Matthews, North Carolina.

15.     For the tax processing years 2018 and 2019 (i.e., for returns for tax years 2017 and 2018 prepared and filed in 2018 and 2019), the Drake software was purchased with a Discover Card ending -7460, identified in Drake Records as belonging to Alexis Bentley Cruz. Alexis told

IRS-CI agents that CARTER opened a credit card under her name and had control over the credit card from 2017-2020; Alexis stated that she changed the information on the card account when CARTER gave her the credit card after that time. For the 2020 tax processing year, the Drake tax preparation software was purchased by a credit card ending -6448, identified in Drake Records as belonging to DORI MEIRA.

16.     According to statements made by Bentley and Alexis, DORI ME'IRA EL BEY is an alias used by CARTER.

*Client Interviews*

17.     IRS-CI agents have interviewed at least 19 witnesses who identified CARTER as an individual who prepared at least one individual federal income tax return from the 2018 tax processing year to the present. At least 6 witnesses indicated both that they corresponded with CARTER by email at DIANNE@CARTERREALTY1.COM and that they provided material relevant to tax preparation to CARTER over email. On or about November 26, 2021, IRS-CI agents interviewed Witness 1. Witness 1 told IRS-CI agents that she has had her tax returns prepared by CARTER for the past five years and earlier from somewhere between 2011 and 2013. Witness 1 met CARTER in-person at a Panera Bread restaurant in Charlotte for their first meeting to go over an intake form that CARTER provided and to discuss what Witness 1 would need to provide to CARTER for the preparation and filing of Witness 1's federal income tax return. Since that first meeting, Witness 1 has not met CARTER in person. Witness 1 communicated with CARTER using the phone number ending -9558 and email address DIANNE@CARTERREALTY1.COM. Witness 1 told IRS-CI agents that she communicated with this email address in 2017, 2018, 2019, and 2020. Witness 1 said that she last communicated with the DIANNE@CARTERREALTY1.COM email address in November of 2021.

7

Witness 1 forwarded to Your Affiant an email from the DIANNE@CARTERREALTY1.COM email address dated December 5, 2021, with a subject "Re: Tax Information," and a signature listing the name DIANNE CARTER and a phone number ending -9558, responding to an email that Witness 1 sent to the DIANNE@CARTERREALTY1.COM address on November 25, 2021.

18.     Witness 1 told the IRS-CI agents that CARTER prepared and filed her federal income tax returns for several years including the 2017-2020 tax years. Witness 1's 2017 federal income tax return lists Alexis Cruz and Haynes Tax as the paid preparer; her 2018 federal income tax return lists Alexis Cruz and MBC Tax as the paid preparer; and her 2019 federal income tax return lists Monica Cruz and MBC Tax as the paid preparer. Witness 1 stated all three paid preparer sections are incorrect and that she did not recognize any of the names. Witness 1 only spoke with CARTER to prepare and file her federal income tax returns. For the 2019 tax year, the Schedule C, Profit or Loss from a Business, lists expenses that Witness 1 told the IRS are false. For instance, Witness 1 stated that she did not provide figures to include $17,000 in commissions to CARTER, as is reported on her 2019 Schedule C. Witness 1 also told the agents she would not have provided figures regarding, nor instructed CARTER to include, grooming expenses as a business expense, as is reported on her 2019 Schedule C.

19.     On or about November 30, 2021, IRS-CI agents interviewed Witness 2 who stated that CARTER, who he knows as SUGARFOOT, prepared his federal income tax return for the 2019 tax year. Witness 2 stated that his mother recommended CARTER to Witness 2 but Witness 2 had never personally met CARTER. Witness 2 forwarded to Your Affiant an email from DIANNE@CARTERREALTY1.COM dated April 19, 2021 that included an attachment with what purported to be Witness 2's 2019 federal income tax return. The email signature reads

8

DIANNE CARTER and includes a phone number ending -9558. The tax return attached to the email does not match the 2019 federal income tax return filed with the IRS on behalf of Witness 2, in that the preparer name and firm name in the paid preparer sections differ. Neither version lists CARTER: the version which Witness 2 received via email lists Cicley Allen and MSTA Tax Service, whereas Witness 2's filed 2019 federal income tax return lists Monica Cruz and MBC Tax as the paid preparer. Witness 2 told IRS-CI agents that he believed CARTER prepared and filed the 2019 federal income tax return.

20.     Witness 2 stated that he told CARTER that he was coaching youth football and youth basketball on a volunteer basis. He told IRS-CI agents that CARTER asked about his coaching and expenses. Witness 2 stated that he provided expenses to CARTER related to volunteer activity, and that he recalled having a conversation with CARTER in which he explained he was coaching as a volunteer. Nonetheless, Witness 2's Schedule C, Profit or Loss from Business, reported a net business loss of approximately $5,817. Witness 2 told the IRS that he did not have a side business in 2019.

21.     Witness 2 told IRS-CI agents that he does not know a Monica Cruz or a Monica Bentley, nor MBC Tax. He did say, however, that he knows an individual whose girlfriend or wife goes by the name "Miyot," whose mother is the same CARTER who he believed prepared and filed his 2019 tax return. He told the agents that Miyot has a daughter named Alexis.

22.     On or about July 22, 2021, IRS-CI agents interviewed Witness 3 who stated that CARTER prepared her returns for the 2015 through 2017 tax years. CARTER prepared Witness 3's returns over the phone and emailed the completed returns to Witness 3. Witness 3 forwarded to Your Affiant an email containing her completed federal and state tax returns for tax year 2015, dated     March     21,     2016,     which     she     received     from     the     email     address

DIANNE@CARTERREALTY1.COM. The email from DIANNE@CARTERREALTY.COM concludes by stating, "Thank you for allowing Carter Sensible Tax Service assist [sic] with your tax reporting needs!" Witness 3 told the IRS that CARTER instructed her to deposit $250 in cash into a SunTrust bank account. Witness 3 confirmed that she prepared a deposit ticket dated February 6, 2018 in the amount of $250 for a SunTrust bank account ending -0436, addressed to "Carter Realty."

23. Witness 3 told the IRS that for the 2016 and 2017 tax years, CARTER included expenses on the Schedule C, Profit or Loss from Business, that were incorrect. For example, Witness 3 stated that the 2017 return falsely listed professional or tax preparation fees as totaling $750 because she only paid $250 for the preparation of her 2017 taxes; that she did not rent anything that cost $8,400 during the year for her work as the Schedule C indicated; and that she did not pay $820 in maintenance for anything in 2017 as the Schedule C indicated. Witness 3's 2017 return was filed electronically on March 5, 2018.

24. On or about March 8, 2021, IRS-CI agents interviewed Witness 4 who became a client of CARTER's during the 2020 tax processing year. Witness 4 stated that he was introduced to CARTER through a friend who had used CARTER's tax preparation services. Witness 4 stated that CARTER prepared his tax return for the 2019 tax year. Witness 4's 2019 individual income tax return also listed "Monica Cruz" as the paid preparer. Witness 4 provided email correspondence between himself and CARTER using the email address DIANNE@CARTERREALTY1.COM between March 4, 2020 and March 15, 2020. The emails included information regarding, among other things, the preparation of Witness 4's taxes such as payment methods, the return preparation process, anticipated refunds, and attachments containing the completed tax returns. The email signatures read DIANNE CARTER and include a phone

number ending in -9558. Witness 4 stated CARTER met him at a Panera Bread in Matthews, North Carolina for their initial meeting. At their meeting, Witness 4 provided his Form W-2 to CARTER and she prepared Witness 4's federal income tax return on her phone.

25.     On or about November 22, 2021, IRS-CI agents interviewed Witness 5 who stated that CARTER prepared her federal income tax returns for the last 7-9 years. Witness 5 forwarded to Your Affiant emails from DIANNE@CARTERREALTY1.COM dated April 9, 2020 and May 11, 2021. The email dated April 9, 2020 includes an attachment with a 2019 intake form, which includes spaces for income and expense information to be filled out and returned for use in preparation of a tax return. The email dated May 11, 2021 includes a new intake form and a blank Schedule A. The email signatures read DIANNE CARTER and include the phone number ending -9558.

26.     Witness 6 told IRS-CI agents that CARTER had prepared and filed her tax returns for the past five years. Witness 6 stated that after her first meeting with CARTER, she has always emailed her tax paperwork to CARTER using the email address DIANNE@CARTERREALTY1.COM. Witness 7 told IRS-CI agents that CARTER had prepared her tax returns for the last five years, and that Witness 7 had emailed completed intake information with Forms W-2 and 1099 to CARTER in recent years using the email address DIANNE@CARTERREALTY1.com. Witness 8 told IRS-CI agents that CARTER prepared her 2009-2017 tax returns, that Witness 8 would email CARTER all of her documents, which included her Forms W-2, to use to prepare the tax return, and that she sent emails to CARTER at the address DIANNE@CARTERREALTY1.COM in relation to her 2017 Form 1040. Witness 9 told IRS-CI agents that CARTER had been preparing her tax returns for the last five years except for one of those years. Witness 9 stated that each year, Witness 9 sends a completed intake form to

11

CARTER at DIANNE@CARTERREALTY1.COM. Witness 10 told IRS-CI agents that CARTER had prepared his tax returns for the most recent tax years. Witness 10 stated that he prepares and maintains Excel files to document his business expenses, and that he emails CARTER the Excel file with the business expenses and Forms W-2 to DIANNE@CARTERREALTY1.COM.

*Use of Email*

27.     Based on my training and experience, tax return preparers routinely communicate with their clients via email.  In this case, several witnesses described communicating with CARTER via email.  In the current environment relating to COVID-19 restrictions, tax preparers have used electronic means such as email, instant messaging, and text messaging to avoid in person meetings.

28.     Based on my training and experience, tax returns are prepared electronically and can be filed electronically.  As part of the filing process, tax preparers routinely receive email notifications that the tax returns have been processed or rejected by the IRS.

29.     Based on my training and experience, I know that individuals often use email to communicate about other matters that may provide evidence as to the identity and location of the individual(s) using the email accounts. I know that communications between such individuals may also include identifying information about the users of the email or instant message accounts.  For example, messages may include names, nicknames, locations, travel plans, or birthdays that can be used to identify the criminal offenders.

30.     Based on my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account.  Such information can include the subscriber's full name, physical address, telephone

numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). Such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

31. Based on my training and experience, emails sent or received will be stored in the subscriber's mailbox on the email provider's servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on an email provider's servers indefinitely. Moreover, emails that are deleted may be placed into "deleted items folder" or "trash folder" and still reside on the mailbox.

32. Results of a subpoena to Zoho Corporation confirmed that Zoho services the DIANNE@CARTERREALTY1.COM account and collects user information for account holders. The "User Full Name" that Zoho has on file for the DIANNE@CARTERREALTY1.COM account is "Carter $DCRSTS." A tax-preparation business known to be associated with CARTER is Carter Realty Sensible Tax Services, or CRSTS. The telephone number that Zoho has on file for the DIANNE@CARTERREALTY1.COM account is the phone number ending -9558, the same number which (a) appears in email signatures beneath CARTER's name on emails received by several witnesses, and (b) was identified by several witnesses as a telephone number where they are able to reach CARTER.

33. On or about November 2, 2021, Zoho received a preservation letter, pursuant to Title 18 U.S.C. § 2703(f), requesting that Zoho preserve all information and stored data relating to the DIANNE@CARTERREALTY1.COM email account. On or about January 17, 2022, Zoho

received a preservation extension letter, requesting that Zoho continue to preserve all information and stored data relating to the DIANNE@CARTERREALTY1.COM email account.

34.     Therefore, the servers of Zoho are likely to contain stored electronic communications (including retrieved and unretrieved email for Zoho subscribers) and information concerning subscribers and their use of Zoho services, such as account access information and contact information. Based on my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users and demonstrate user activity. Evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

35.     Based on my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, email providers often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

36.     Based on my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers typically

retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. Such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

37.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. Based on my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the IP addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example,

information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

38.     Accordingly, Your Affiant submits that there is probable cause for issuance of a Search Warrant for all records pertaining to the DIANNE@CARTERREALTY1.COM account that are stored at Zoho Corporation.

## **CONCLUSION**

39.     Based on the forgoing, Your Affiant requests that the Court issue the proposed search warrant.

40.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Zoho.  Because the warrant will be served on Zoho, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## **REQUEST FOR SEALING**

41.     Your Affiant further requests that the Court order that all papers in support of this application, including the Affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,



_____

Brian Park
Special Agent
Internal Revenue Service, Criminal
Investigation Division


      In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 2nd day of February, 2022, at 3:22 PM

Signed: February 2, 2022

_____

David S. Cayer
United States Magistrate Judge

## Attachment A

### Property to Be Searched

This warrant applies to information associated with the account:

DIANNE@CARTERREALTY1.COM, an email address that is stored at premises owned,

maintained, controlled, or operated by Zoho Corporation, a company that accepts service of legal

process at 4141 Hacienda Drive, Pleasanton, CA 94588.

**Attachment B**

**Particular Things to be Seized**

**I.  Information to be Disclosed by Zoho Corporation (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) and received by Zoho Corporation on or about November 2, 2021, the Provider is required to disclose the following information to the government for the account listed in Attachment A:

a.      The contents of all emails associated with the account from January 2018 to the present, including stored or preserved copies of emails sent to and from the account, draft emails, emails located in the "trash" folder, the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and all attachments to each email; and

b.      The contents of all other communication including text messages, voicemails, recorded calls, emails, and chat messages associated with the account, including stored or preserved copies of chat logs, the source and destination addresses associated with each communication, the date and time at which each communication was sent, and the size and length of each communication, from January 2018 through the present.

c.      All identity and contact information, including full name, email address, physical address, date of birth, phone numbers, and other personal identifiers.

The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**II.     Information to be Seized by the Government**

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of criminal contempt, in violation of 18 U.S.C. §401 (3) and/or aiding and assisting in the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2) involving DIANNE CARTER and occurring after January 2018 including, for the account listed on Attachment A, information pertaining to the following matters:

(a)     Tax preparation communications; communications between DIANNE@CARTERREALTY1.COM and clients relating to the preparation of tax returns.

(b)     Communications related to the filing of tax returns, including email correspondence with the IRS and Drake.

(c)     Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access and use;

(d)     Evidence indicating the email account user's knowledge of tax law requirements and/or return preparation requirements, and/or knowledge of the permanent injunction barring CARTER from preparing returns;

(e)     Evidence indicating the financial institution(s) at which the account user holds accounts, including correspondence from financial institutions about account activity.

(f)     The identity of the person(s) who created or used the email account, including records that help reveal the whereabouts of such person(s).

(g)     The identity of the person(s) who communicated with the email account about matters relating to tax preparation, including records that help reveal their whereabouts.